2021 PA Super 3

| | | |
|---|---|---|
| DR. AHLAM KHALIL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERALD J. WILLIAMS ESQUIRE; | : | No. 2549 EDA 2019 |
| BETH COLE ESQUIRE; WILLIAMS | : | |
| CUKER BEREZOFSKY, LLC | : | |

Appeal from the Order Entered July 12, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  May Term, 2013  No. 0825

BEFORE:  KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                    **FILED JANUARY 5, 2021**

Dr. Ahlam Khalil (Appellant) appeals from the July 12, 2019 order of the Court of Common Pleas of Philadelphia County (trial court) granting summary judgment in favor of Gerald J. Williams, Esquire, Beth Cole, Esquire, and Williams Cuker Berezofsky, LLC (collectively, Appellees).  We affirm in part and reverse in part.

**I.**

**A.**

This appeal involves a legal malpractice action that arose out of two separate but related cases involving Appellant's unit in a Philadelphia condominium building.  In May 2007, Appellant's unit suffered water damage

_____

[*] Retired Senior Judge assigned to the Superior Court.

caused by a leak in the above unit. The unit was insured under a condominium unitowner's policy issued by State Farm Fire and Casualty Company (State Farm), while her condominium association was insured under a master policy issued by Travelers Property Casualty Company of America (Travelers). Displeased with their responses to her claim, Appellant filed a civil action in July 2008 (the water damage case) in which she asserted claims of breach of contract and bad faith against both State Farm and Travelers, as well as a claim of negligence against the owners of the above unit, Jason and Anne Marie Diegidio (the Diegidios).

Due to the water damage, Appellant moved out of her unit and eventually stopped paying her condominium assessment fees. In July 2009, Pier 3 Condominium Association (Pier 3) sued her for outstanding fees and charges (the Pier 3 case). Appellant responded by filing several counterclaims against Pier 3, alleging that it failed to maintain and remedy damages to the common elements area.[1]

Appellant also filed a joinder complaint against the Diegidios, individually and as members of the Pier 3 Condominium Board, and Wentworth Property Management (Wentworth), the company responsible for

---

[1] Appellant asserted counts of assumpsit; negligence; violation of the Uniform Condominium Act, 68 Pa.C.S. §§ 3101-3414; violations of Sections 328(D) and 364 of the Restatement (Second) of Torts; nuisance; breach of implied covenant of good faith and fair dealing; and unjust enrichment/*quantum meruit*.

maintenance of the building. Appellant alleged that the Diegidios created the dangerous condition leading to the discharge of water into her unit, and that Jason Diegidio, as president of the condominium association, exerted undue influence to ensure that she would not be compensated for the damage. As for Wentworth, Appellant asserted it had failed to maintain the common elements areas and remedy the damage to her unit.[2]

In April 2010, with both cases pending, Appellant retained Appellees to represent her in the water damage case. As trial approached in May 2011, Appellant reached an agreement to settle with Travelers for $17,500 and, along with Attorney Cole, signed a general release (the Travelers release). While Appellant disputes the circumstances around her signing, its terms are clear. Appellant is listed as the "Releasor," Travelers as the "Releasee," and Pier 3 is acknowledged as "Releasee's insured." Under the release, Appellant agreed "to terminate all controversy and/or claims for injuries or damages against Releasee, and Releasee's Insured, and any affiliated or related people or entities, both known and unknown, including future developments thereof, in any way growing out of or connected with said incident." Further, Appellant

---

[2] Based on her allegations, Appellant asserted counts against the Diegidios and Wentworth for gross negligence and negligence under a theory of *res ispa loquitur*; a count for breach of fiduciary duty against Jason Diegidio in his official capacity; and counts against Wentworth for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1–210–6.

"agreed that this [release] shall be a complete bar to all claims or suits against Releasee, Releasee's Insured, and any affiliated or related people or entities, both known and unknown, for injuries or damages of whatsoever nature resulting from or to said incident [at the Unit.]" Significantly, the release contained no language limiting itself to the water damage case.

With Travelers out of the case, Appellant proceeded to trial on her remaining claims. During trial, she reached an agreement to settle her claims against the Diegidios and State Farm for $50,000 and $40,000, respectively.[3] In an on-record colloquy held in chambers on May 20, 2011, Appellant confirmed her agreement to the terms of the settlements, including Appellees agreeing to represent her for no further fee in the Pier 3 case. Less than a week later, on May 26, 2011, the trial court marked the action as settled, and Attorney Cole entered her appearance in the Pier 3 case on June 1, 2011.

Almost immediately, though, Appellant had second thoughts about the settlements, refusing to sign releases for the Diegidios and State Farm or accept payment from any of the defendants. Because of Appellant's change of mind, Attorney Cole withdrew from the Pier 3 case on August 25, 2011. The trial court then scheduled a hearing to clarify the status of the

---

[3] Appellant also agreed to release Jason Diegidio, individually and in his capacity as a condominium board member, from the Pier 3 case. On August 5, 2011, the trial court in the Pier 3 case approved a stipulation that all claims against the Diegidios were withdrawn with prejudice.

settlements. At a September 30, 2011 hearing, Appellant explained her objections to each settlement. Relevant here, Appellant objected to the Travelers settlement because she believed that the release she signed would impair her claims in the Pier 3 case, even though her attorneys had assured her it would not.[4] Despite her complaints, on October 11, 2011, the trial court issued an order finding all the settlements valid and directing each defendant to pay their respective amount into the court. After each defendant complied, the full settlement amount ($107,500) was placed in escrow with the trial court—where it has remained since. Appellant, meanwhile, did not appeal from the trial court's October 11, 2011 order finding the settlements valid.

In April 2012, relying on the Travelers release, Pier 3 and Wentworth moved to dismiss Appellant's counterclaims in the Pier 3 case. Agreeing that the release precluded the claims, the trial court dismissed Appellant's claims against Pier 3 and Wentworth on July 17, 2012. The case proceeded to trial on Pier 3's claim for outstanding assessment fees. On July 19, 2012, a jury found in favor of Pier 3 for $109,000. Following the verdict, Appellant filed a motion for post-trial relief in which she alleged, among other things, that the

_____

[4] Appellant objected to the State Farm settlement because she learned that a large quantity of her personal property, which had been placed into storage with two separate third-party companies by State Farm, was either missing or destroyed. As for the Diegidios, Appellant contended that she never agreed to release Jason Diegidio, either individually or in his capacity as a board member, from the Pier 3 case.

Travelers release had been entered into by way of "unilateral mistake, mutual mistake, and/or fraud." After the trial court denied the motion, the prothonotary entered judgment for Pier 3 on August 14, 2012, following which Appellant appealed the judgment to the Commonwealth Court.[5]

That appeal, though, was stayed pending disposition of the water damage case, which became active again in November 2012 when Appellees moved to withdraw from the case. On January 7, 2013, the trial court granted the withdrawal and ordered the case "settled, discontinued, and ended." On February 6, 2013, Appellant filed a *pro se* motion for reconsideration of the court's order, as well as a separate "Motion to Vacate and/or Set Aside Stipulation for Settlement and Release(s)." The trial court denied her motion for reconsideration on February 21, 2013, and did the same to her motion to vacate on March 15, 2013, finding it had no jurisdiction to vacate the 2011 settlements. On March 19, 2013, Appellant filed a notice of appeal from the trial court's various orders. This Court quashed the appeal by finding, among other reasons, that Appellant's attempt to litigate the validity of the 2011 settlements was untimely. ***Khalil v. Diegidio***, 2014 WL 10937477 (Pa.

---

[5] The Commonwealth Court and not this Court had jurisdiction because the appeal involved an action by a condominium association for collection of fees and costs. ***See*** 42 Pa.C.S. § 762(a)(5) (Commonwealth Court has exclusive jurisdiction over proceedings related to not-for-profit corporations).

Super. filed April 10, 2014) (unpublished memorandum), *appeal denied*, 99 A.3d 926 (Pa. filed September 17, 2014).

After our decision, the Commonwealth Court relisted the appeal in the Pier 3 case for disposition. Appellant argued, among other things, that the trial court erred in barring her claims against Pier 3 and Wentworth because they were not signatories to the release, and that her claims against them were distinct from those she raised in the water damage case. The Commonwealth Court disagreed and found that Appellant released her claims by signing the general release as part of the Travelers settlement. ***Pier 3 Condominium Ass'n v. Khalil***, 2015 WL 5458563 (Pa. Cmwlth. filed July 9, 2015) (unpublished memorandum).

**B.**

The instant legal malpractice action began on May 10, 2013, when Appellant filed a praecipe initiating the action against the Appellees; she did not file her complaint until March 29, 2017. Appellant raised five counts in her complaint: (1) legal malpractice based in negligence; (2) legal malpractice based in breach of contract; (3) negligent misrepresentation; (4) breach of contract; and (5) fraudulent misrepresentation.

In her complaint, Appellant alleged that before signing the Travelers release, she demanded "clear and specific wording" that signing would not affect her claims in the then-pending Pier 3 case. Even though her attorneys assured her signing would not affect her claims in that case, Appellant refused

to sign the initial Travelers release presented to her. This resulted in Attorney Cole drafting an alternative version containing an asterisk stating that the release "does not include any claims in connection" with the Pier 3 case. Appellant claimed that this was the version of the release that she actually signed. However, to her surprise, when Pier 3 and Wentworth moved to dismiss her claims in the Pier 3 case, they presented a signed release that did not include the asterisk, leading Appellant to allege that Attorneys Williams and Cole or counsel for Pier 3 or Wentworth had switched or altered the Travelers release.[6]

Appellees denied they ever switched the release and, after discovery, moved for summary judgment. Addressing the first four non-fraud counts in Appellant's complaint, Appellees contended that they were barred by **Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnik**, 587 A.2d 1346 (Pa. 1991), in which our Supreme Court held that "it will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action." **Id**. at 1348. In Appellees' view, Appellant was seeking to relitigate her dissatisfaction with the water damage settlements through her legal malpractice action. As for the fifth and

_____

[6] Appellant also alleged that Attorneys Williams and Cole fraudulently induced her to settle with the Diegidios and State Farm by agreeing to represent her at no cost in the Pier 3 case but later withdrawing from the case.

final count alleging fraud, Appellees argued that it was barred by collateral estoppel, asserting that Appellant's claim of fraud had been raised and rejected in both the water damage and Pier 3 cases.

Appellant countered that *Muhammad* was inapplicable to her non-fraud claims because she was not alleging dissatisfaction with the settlement amounts. Rather, Appellant insisted, she was alleging that her attorneys had misled her by incorrectly advising her that her claims in the Pier 3 case would be unaffected by signing the release. In support, Appellant produced several emails connected to the signing of the Travelers release. The emails showed that Travelers initially prepared a general release listing Pier 3 as a releasee. In response, Attorney Cole proposed adding language excluding Appellant's claims in the Pier 3 case, with her preparing a second version of the release with the asterisk. Travelers, however, was reluctant to reference the Pier 3 case because it was not a party to the case; instead, Travelers drafted a third version of the release eliminating Pier 3 as a releasee but still acknowledging it as being Travelers' insured. It is this third version that Appellant signed and was later used to dismiss her counterclaims in the Pier 3 case, though Appellant claimed she signed the second version with the asterisk. Finally, Appellant disputed that her fraud claim was estopped, arguing that she never got the chance to litigate her claim that the releases were switched or altered in either of the two prior cases.

Agreeing with Appellees, the trial court issued a July 11, 2019 order holding that Appellant's non-fraud claims were barred by "the ***Muhammad*** doctrine," and that her fraudulent misrepresentation claim was barred by collateral estoppel.[7]  As a result, the trial court granted summary judgment for Appellees and dismissed Appellant's action with prejudice.  Appellant filed a timely notice of appeal and, after being ordered to do so, a Pa.R.A.P. 1925(b) statement challenging the trial court's findings that ***Muhammad*** and collateral estoppel barred her claims.[8]

_____

[7] While the summary judgment motion was pending, Appellant filed another legal malpractice action against Appellees on March 22, 2019.  Appellees filed preliminary objections based on the doctrine of *lis pendens*, since this legal malpractice action was still pending.  After summary judgment was granted in this case, the trial court in the 2019 action sustained Appellees' preliminary objections and dismissed Appellant's complaint with prejudice on grounds of *res judicata*.  On appeal, a panel of this Court affirmed in a published opinion. ***See Khalil v. Cole***, --- A.3d ---, 2020 WL 5858628 (Pa. Super. filed October 2, 2020).

[8] Our standard of review for a trial court's decision to grant or deny summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion.  As with all questions of law, our review is plenary.

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule.  Pa.R.C.P. 1035.2.  The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered.  Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or

- 10 -

**II.**

In her first issue, Appellant challenges the trial court's reliance on *Muhammad* in dismissing her non-fraud claims against her former attorneys and their law firm. *Muhammad*, she contends, does not bar her claims because she is alleging they gave her incorrect legal advice about the scope of a release connected to a settlement, leading her to sign the Travelers release later used to dismiss her claims in the Pier 3 case. To support this proposition, Appellant relies heavily on two post-*Muhammad* cases, *Collas v. Garnick*, 624 A.2d 117 (Pa. Super. 1993), and *McMahon v. Shea*, 688 A.2d 1179 (Pa. 1997). This being the case, we begin by reviewing *Muhammad* and its progeny, including *Collas* and *McMahon*.

**A.**

This Court has summarized *Muhammad*:

> In *Muhammad,* plaintiffs filed a legal malpractice action against defendant law firm as a result of defendant's representation of plaintiffs in a medical malpractice lawsuit following the death of plaintiffs' child. Defendant law firm negotiated a settlement of the medical malpractice case. Plaintiffs verbally accepted the

---

answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Thompson v. Ginkel*, 95 A.3d 900, 904 (Pa. Super. 2014).

settlement offer. Thereafter, plaintiffs changed their minds about the settlement before signing a written accord. Defendant law firm filed a Rule to Show Cause why the settlement agreement should not be enforced. After an evidentiary hearing, the trial court enforced the agreement. The court ordered the defendants in the medical malpractice case to pay the settlement funds and instructed the prothonotary to mark the case settled. Plaintiffs hired new counsel, appealed the order, and this Court affirmed. *Muhammad v. Childrens Hospital*, 337 Pa. Super. 635, 487 A.2d 443 (1984) (unpublished memorandum opinion).

Thereafter, plaintiffs filed a legal malpractice case against the law firm that had negotiated the medical-malpractice settlement. The legal malpractice case was dismissed, and our Supreme Court affirmed that dismissal, stating:

> This case must be resolved in light of our longstanding public policy which encourages settlements. Simply stated, ***we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed***, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

*Muhammad*, 587 A.2d at 1348 (emphasis added). The Court further stated:

> [W]e foreclose the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies. To permit otherwise results in unfairness to the attorneys who relied on their client's assent and unfairness to the litigants whose cases have not yet been tried. Additionally, it places an unnecessarily arduous burden on an overly taxed court system. We do believe, however, there must be redress for the plaintiff who has been fraudulently induced into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement.

*Id*. at 1351.

***Silvagni v. Shorr***, 113 A.3d 810, 813 (Pa. Super. 2015).

At first, this Court read ***Muhammad*** as proclaiming "a clear, bright line rule which, absent fraud, shields attorneys from legal malpractice claims sounding in negligence or contract where they involve cases concluded by completed settlement." ***Miller v. Berschler***, 621 A.2d 595, 598 (Pa. Super. 1993). However, in ***Collas***, we declined to read ***Muhammad*** as establishing a complete bar to claims of legal malpractice not involving fraud in settled cases.

In ***Collas***, the plaintiff filed a legal malpractice case against her former lawyer who had advised her to sign a general release as part of a settlement of her motor vehicle-related personal injury action. The "general release [ ], by its terms, released and discharged the other driver and all other parties, known or unknown, who might be liable for the damages sustained." ***Collas***, 624 A.2d*. at 119. Based on her lawyer's assurance the release would not preclude an action against the manufacturer of the car's seat belt system, plaintiff signed the release. Plaintiff later sued the manufacturer but her action was barred by the release, following which she filed a legal malpractice action against her former lawyer. Relying on ***Muhammad***, the trial court dismissed the action.

We reversed and held that ***Muhammad*** did not bar plaintiff's malpractice claim. After first recognizing that plaintiff had stated a sufficient

cause of action for malpractice, the panel found **Muhammad** to be inapplicable, stating:

> In the instant case, the plaintiffs have not alleged an inadequacy of the settlement negotiated by their lawyer. Instead, they complain that their lawyer negligently gave them bad advice about a written agreement which they had been asked to execute. The fact that the written agreement was prepared as part of the settlement of their prior action was incidental; it did not relieve counsel of an obligation to exercise care in determining the effect of the agreement which his clients were being asked to sign. This was particularly so where, as here, the clients had specifically asked the lawyer regarding the effect of the release and had told him of their plans to file a second action for the wife-claimant's injuries. With respect to his advice regarding the agreement of release, counsel was required to exercise the same degree of care as he or she would have exercised in advising a client about a complex agreement not a part of the settlement of a legal action.

*Id*. at 121.

A few years after **Collas**, the Pennsylvania Supreme Court revisited **Muhammad** in **McMahon**. There, as part of their divorce, a husband and wife entered into a written settlement agreement for child support and alimony payments that were to terminate when their youngest child reached age 21, was emancipated, or finished college, whichever happened last. Based on his attorneys' advice, the husband stipulated that the agreement would be incorporated but not merged into the final divorce decree. When his ex-wife remarried, the husband tried to terminate the alimony payments but was unable because the parties' agreement had survived the divorce decree. **McMahon**, 688 A.2d at 1180. After his petition was denied, the husband filed a legal malpractice action against his attorneys because they failed to merge

his alimony agreement with the final divorce decree, which led to him continuing to pay alimony after his ex-wife remarried. *Id*. at 1180-81. The trial court dismissed the complaint but this Court reversed and found ***Muhammad*** inapplicable.

In a non-precedential decision, a six-member Pennsylvania Supreme Court affirmed. The Opinion Announcing the Judgment of Court (OAJC) found ***Muhammad*** inapplicable because the plaintiff husband was dissatisfied not with his settlement but with his attorneys failing to provide correct advice about well-established principles of law in settling his case:

> The laudable purpose of reducing litigation and encouraging finality would not be served by precluding the instant action. [Plaintiff] merely seeks redress for his attorneys' alleged negligence in failing to advise him as to the controlling law applicable to a contract.

*Id*. at 1182 (Zappala, J., joined by Flaherty, C.J., and Nigro, J.).

In a concurring opinion, Justice Cappy disagreed that ***Muhammad*** should be limited to its facts, emphasizing its continued validity in encouraging settlements and reducing litigation. *Id*. at 1182-83 (Cappy, J., joined by Castille and Newman, JJ.). Justice Cappy, however, agreed with the OAJC where it distinguished "between a challenge to an attorney's professional judgment regarding an amount to be accepted or paid in settlement of a claim, and a challenge to an attorney's failure to correctly advise his client about well established principles of law in settling a case. This is a reasonable and justifiable distinction." *Id*. at 1183. As a result, all six members of the Court

distinguished between "holding an attorney accountable to inform a client about the ramifications of existing law and allowing the second guessing of an attorney's professional judgment in an attempt to obtain monies, once a settlement agreement has been reached." *Id*.

Not long after **McMahon**, we explained the distinction between malpractice claims barred by **Muhammad** and those that are not.

> In cases wherein a dissatisfied litigant merely wishes to second guess his or her decision to settle due to speculation that he or she may have been able to secure a larger amount of money, *i.e.*[,] "get a better deal[,]" the **Muhammad** rule applies so as to bar that litigant from suing his counsel for negligence. If, however, a settlement agreement is legally deficient or if an attorney fails to explain the effect of a legal document, the client may seek redress from counsel by filing a malpractice action sounding in negligence.

**Banks v. Jerome Taylor & Associates**, 700 A.2d 1329, 1332 (Pa. Super. 1997).

### B.

Appellant argues that **Muhammad** is distinguishable because her non-fraud claims do not challenge the reasonableness of the amount of the settlements in the water damage action. Instead, she maintains that her claims alleged that her former attorneys gave her erroneous advice about the effect the Travelers release would have on counterclaims in the Pier 3 case. **See** Appellant's Brief at 48. In this sense, she contends, this case is analogous to **Collas** where the plaintiff's attorney advised the client that signing a release would not adversely affect her claims in a potential future case. **Id**. at 55.

She also contends that this case is analogous to *McMahon*, where our Supreme Court held that the rationale behind *Muhammad* was inapplicable to the plaintiff's legal malpractice claims that did not attack the value of his settlement but his attorneys' faulty advice about the possible consequence of entering into a legal agreement. *Id*. at 58.

We agree with Appellant that *Collas* and *McMahon* are good law and *Muhammad* did not establish a blanket rule barring any non-fraud claim against a former attorney where the prior matter led to settlement. In particular, although our Supreme Court's decision in *McMahon* was only a plurality decision, the three concurring justices disputed only that *Muhammad* be limited solely to its facts; those justices agreed that *Muhammad* does not apply to allegations of attorney negligence in a settled case that goes beyond a contention that the attorney was negligent in advising about a settlement amount. *See McMahon*, 688 A.2d at 1183. Most recently, in *Kilmer v. Sposito*, 146 A.3d 1275 (Pa. Super. 2016), we distinguished an attorney's professional judgment in negotiating a settlement from the attorney's failure to advise a client correctly on the law pertaining to the client's interests, recognizing that under the latter scenario, the plaintiff's claims are not barred by *Muhammad*. *Id*. at 1279-80 (citing *McMahon* in finding that plaintiff/wife was not barred from maintaining legal malpractice action where she followed attorney's advice and elected to take against her

late husband's will when, by operation of law, she would have been entitled to a larger portion of the estate).

That said, if **Collas** and **McMahon** carve out an exception to **Muhammad**, Appellant did not plead facts in her complaint that fit within that exception. In her March 29, 2017 complaint, Appellant claimed that Attorneys Williams and Cole assured her the Travelers release would not affect her claims in the Pier 3 case. Appellant's Complaint, 3/29/17, at Paragraph 19. Appellant, though, then alleged the following:

20. After [Appellant] refused to sign the release as presented to her by [Attorneys] Williams and Cole, [Attorney] Cole presented [Appellant] with a different settlement release that contained an asterisk which [Attorney] Cole purported that the release in [the water damage case] would not precluded [Appellant] from asserting [her] counterclaims and joinder action in [the Assessment fees case].

21. Relying on the assurance and [advice] of [Attorneys] Williams and Cole, [Appellant] signed the aforementioned release containing an asterisk.

*Id*. at Paragraphs 20-21.

Appellant went on to assert that she was surprised when Pier 3 and Wentworth moved for summary judgment based on the Travelers release, since she signed the version with the asterisk.

31. To [Appellant's] dismay, the release presented by counsel for [Pier 3 and Wentworth] was not the one presented to [Appellant] by [Attorney] Cole.

32. The release presented by counsel for [Pier 3 and Wentworth] in the summary judgment motion in the [Assessment fees case] did not contain the aforementioned asterisk and was not the one signed by [Appellant].

- 18 -

33. It became evident to [Appellant] that [Attorneys] Cole and Williams and/or counsel for [Pier 3 and Wentworth] **switched the release**. Nevertheless, [Appellant] would not have entertained a release without the assurances from [Attorneys] Williams and Cole that it would not affect her counterclaims and joinder claim in [the Assessment fees case].

*Id*. at Paragraphs 31-33 (emphasis added).

As these averments show, Appellant pled facts alleging that she was the victim of fraud. More specifically, she alleged that the Travelers release that she signed was intentionally switched with one that she did not sign, thus leading to her claims in a separate case to be dismissed due to the fraud. While claims of fraud are not barred under **Muhammad**, they also cannot be styled as claims sounding in negligence and breach of contract after a settlement has been accepted by the client.

While she does allege that her attorneys gave her flawed legal advice about the effect of signing the Travelers release, Appellant then alleges that she refused to sign the release unless the language she wanted was added. *Id*. at Paragraphs 19-20. Then, after she signed a release with the language she demanded, that release was intentionally switched and later used against her in a separate case. *Id*. at Paragraph 33. Put differently, Appellant is not alleging that it is her attorneys' negligence that caused her damages; instead, she is alleging that her damages—dismissal of her claims in a separate case—were caused by fraud.

In contrast, neither of the plaintiffs in **Collas** and **McMahon** alleged conduct of the sort that Appellant has alleged. Instead, in both of those cases,

- 19 -

the plaintiffs claimed that their attorneys failed to correctly advise them about well-established principles of the law in settling the case, and that it was these misstatements about the effect of the settlements that placed the plaintiffs' claims outside the scope of the **Muhammad** bar against claims of negligence against a former attorney after a settlement has been reached.

Having found **Collas** and **McMahon** distinguishable, **Muhammad** applies to bar her claims sounding in negligence and contract against her former attorneys and their law firm. We, thus, find that the trial court did not err in dismissing the first four counts of her complaint.[9]

## III.

Appellant next argues that the trial court erred in dismissing her fifth count for fraudulent misrepresentation on collateral estoppel grounds. "The doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit."

---

[9] We also note that Appellant argues that the trial court erred in dismissing her non-fraud claims because she alleged that she was fraudulently induced to settle with the Diegidios and State Farm by agreeing to represent her in the Pier 3 case but never intended to do so. **See** Appellant's Brief at 51. However, because Appellant's argument is confined to a single paragraph in her brief, we deem her argument waived for lack of meaningful analysis and development. **See In re M.Z.T.M.W.**, 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.") (citations omitted).

*Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 286 (Pa. Super.

2016) (citation omitted).  Collateral estoppel bars relitigation of an issue if

these elements are met:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Weissberger v. Myers*, 90 A.3d 730, 733 (Pa. Super. 2014) (citation

omitted).  Collateral estoppel does not require either "identity of causes of

action or parties."  *Chada v. Chada*, 756 A.3d 39, 42 (Pa. Super. 2000)

(citation omitted).  Rather, "[c]ollateral estoppel may be used as either a

sword or shield by a stranger to the prior action if the party against whom the

doctrine is invoked was a party or in privity with a party to the prior action."

*Columbia Med. Grp., Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184, 1190

(Pa. Super. 2003) (quotation omitted).  Unlike *res judiciata*, which bars later

claims that could have been litigated in the prior proceeding but were not,

collateral estoppel bars litigation of issues that were actually litigated in the

prior action.  *See Wilmington Trust, N.A. v. Unknown Heirs*, 219 A.3d

1173, 1179 (Pa. Super. 2019) (citation omitted).[10]

_____

[10] Invocation of the doctrine of *res judicata* (claim preclusion) requires that both the former and latter suits possess the following common elements:  (1)

In holding that Appellant was estopped from claiming fraud, the trial court found that the claim had been "raised, considered and rejected" in both the water damage and Pier 3 cases, and then affirmed by both this Court and the Commonwealth Court. *See* Trial Court Opinion, 3/20/20, at 21-22. Appellant disputes this by first arguing that none of those prior courts considered the issue involved in her fraudulent misrepresentation claim. *See* Appellant's Brief at 70-71. On this point, she argues that the trial court misread our decision in the water damage action affirming the denial of her motion to vacate the settlements. She observes that this Court did not rule on the merits of her challenge to the validity of the settlements; instead, this Court quashed the appeal on jurisdictional grounds because she failed to appeal from the trial court's October 11, 2011 order in the water damage case finding all the settlements valid. *Id*. at 72-73. Appellant likewise argues that

---

identity in the thing sued upon; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued. *Matternas v. Stehman*, 642 A.2d 1120, 1123, (Pa. Super. 1994). "The fundamental principle upon which [*res judicata*] is based is that a court judgment should be conclusive as between the parties and their privies in respect to every fact which could properly have been considered in reaching the determination and in respect to all points of law relating directly to the cause of action and affecting the subject matter before the court. The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights. When the cause of action in the first and second actions are distinct, or, even though related, are not so closely related that matters essential to recovery in the second action have been determined in the first action, the doctrine of *res judicata* does not apply." *Hammel v. Hammel*, 636 A.2d 214, 218 (1994) (citations omitted, emphasis supplied).

her fraud claim was not considered by the Commonwealth Court in the Pier 3 case, noting that the main issue on appeal concerned the language of the Travelers release and whether it released Pier 3 and Wentworth from her counterclaims. *Id*. at 75. Appellees, meanwhile, echo the trial court and assert that Appellant's claim of fraud was raised and rejected in both of Appellant's underlying cases. *See* Appellee's Brief at 27.

As noted earlier, Appellant's fifth count in her complaint was for fraudulent misrepresentation, the elements of which are: (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness on whether it is true or false; (4) intending to mislead another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Weston v. Northampton Pers. Care. Inc.*, 62 A.3d 947, 960 (Pa. Super. 2013).

In her claim, Appellant alleged that Attorney Cole presented her with a version of the Travelers release containing an asterisk purporting to limit its effect to the water damage case, and that it was this version that she actually signed. *See* Appellant's Complaint, 3/29/17, at Paragraph 76. She then asserts that "[t]he [r]elease submitted to the Court was different from the one signed by [Appellant] which had an asterisk" and "[a]s a result of [Appellant's] reliance on the fraudulent representations of [Attorneys Williams and Cole], [Appellant] suffered damages including but not limited to her inability to

prosecute her claims in [the assessment fees case.]" *Id*. at Paragraphs 77-78.

We begin with the first element of collateral estoppel:  whether the issue decided in the prior case is identical to one presented in this case.  Beginning with the water damage case, it does not appear that Appellant ever raised her claim that the Travelers release was switched or altered.  At the September 30, 2011 hearing to address the status of the water damage settlements, Appellant, who was still represented by Attorneys Williams and Cole, did not allege that the Travelers release had been switched or altered; instead, she expressed concern that the Travelers release, along with the proposed releases for the Diegidios and State Farm, would affect her counterclaims in the Pier 3 case.  *See* Reproduced Record (RR) at 442a-443a (N.T., 9/30/2011, at 23-24).  As a result, when the trial court in the water damage case entered its October 11, 2011 order finding that the settlements were valid, there was no allegation of fraud before it.

Despite her concerns about the settlements, Appellant chose not to appeal from this order, waiting until after her claims in the Pier 3 case were dismissed to file a motion to vacate the settlements on February 6, 2013.  Finding that it was without jurisdiction to vacate the 2011 settlements, the trial court denied that motion.  On appeal, this Court observed that the February 6, 2013 motion to vacate asserted the same issues that Appellant raised at the September 30, 2011 hearing.  *See Khalil*, 2014 WL 10937477

at *4. Agreeing with the trial court that it was without jurisdiction in the appeal, this Court held that Appellant should have filed an appeal within 30 days of the October 11, 2011 order. *Id*. By failing to do so, we held, Appellant could not revive her claims attacking the validity of the settlements. *Id*.

Based on this summary, we cannot conclude that Appellant's claim of fraud was raised and rejected in the water damage action. While Appellant was concerned about the effect of the Travelers release after the settlement, there is no indication that she raised the identical claim that she is trying to raise in her fraudulent misrepresentation claim, and Appellees have not pointed us to anything in the record in the water damage case to the contrary. Moreover, while Appellant could have perhaps raised her claim of fraud once she realized which release she signed, we note that collateral estoppel applies to issues that were *actually* litigated in the prior action, rather than claims which *could have* been raised, which are precluded by *res judicata*. Thus, the fraud claim was not litigated in the prior water damage case.

However, that does not end our inquiry, as we must also determine whether the fraud claim was raised and litigated in the Pier 3 case. As noted above, in that case, Appellant's claims against Pier 3 and Wentworth were dismissed just before trial. Then, following the verdict in favor of Pier 3, Appellant moved for post-trial relief by arguing, among other things, that the Travelers release was "entered into by way of unilateral mistake, mutual mistake, and/or fraud." RR 622a (Appellant's Motion for Post-Trial Relief,

7/30/12, at Paragraph 55). After the trial court denied her motion, Appellant reasserted the issue in her Pa.R.A.P. 1925(b) statement. The trial court, however, declined to the address the merits of the issue in its Pa.R.A.P. 1925(a) opinion, observing, "[n]either the validity of the release nor the circumstances in which the release was signed were issued before this Court." RR 628a (Trial Court Opinion, 11/21/12, at 5). Consequently, the court stated, "the only issue before this Court, with regards to the release, was to determine whether the language of the release released both Pier 3 and Wentworth." *Id*.

On appeal to the Commonwealth Court, Appellant did not reassert the claim raised in her post-trial motion. Instead, in her lead issue, Appellant contended that "the trial court erred in determining that the [Travelers] Release barred her claims against [Pier 3] and Wentworth because they were not signatories to the Release and were not named in the recital of released parties." *Pier 3*, 2015 WL 5458563 at *4. After reviewing the terms of the Travelers release, the Commonwealth Court found that Appellant's counterclaims against Pier 3 were barred by the Travelers release. *See id*. at *6. Additionally, the Commonwealth Court concluded that Appellant's joinder claims against Wentworth were barred because, under both case law and the Uniform Condominium Act, tort and contract suits against agents of condominium associations are prohibited. *See id*. at *6-8.

In a footnote, the Commonwealth Court observed that Travelers, in its brief in the appeal of the water damage case, conceded that the Travelers release was not intended to bar Appellant's claims against Pier 3 and Wentworth. *See id*. at \*8 n.15. The Commonwealth Court, however, found this to be of no import, stating that "[b]ecause the [water damage action] has now been litigated to final judgment, the Release is deemed valid, and Appellant cannot now use this Court, an appellate court, as the forum to re-contest the validity of the Release on the ground of mutual mistake." *Id*.

As we did after reviewing the water damage case, we cannot conclude that the merits of Appellant's claim of fraud were raised and rejected in the water damage action. While Appellant raised the claim somewhat in her post-trial motion in the Pier 3 case, the trial court in that case declined to address any allegations about the circumstances in which the Travelers release was signed, finding that its determination was limited to whether the terms of the release barred Appellant's claims against Pier 3 and Wentworth. Likewise, though not raised on appeal, the Commonwealth Court found that any challenge to the validity of the Travelers release would be improper, since the trial court in the water damage action found it to be valid and this Court found that Appellant's attempt to re-litigate the release were untimely. Thus, we agree with Appellant that the issue raised in this matter—her allegations of fraud against her former attorneys—was not actually litigated in the Pier 3 case and, therefore, is not estopped from being raised in this matter.

Accordingly, we affirm the trial court's grant of summary judgment and dismissal with prejudice of counts one through four of Appellant's complaint. We reverse, however, the trial court's dismissal of Appellant claim of fraudulent misrepresentation at count five.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/05/2021