688 A.2d 1179

**Robert M. McMAHON, Appellee,**

**v.**

**John G. SHEA, Esquire, Phyllis McCormick Shea, Esquire, Michael S. Dinney, Esquire and Shea and Shea, a Partnership, Appellants.**

Supreme Court of Pennsylvania.

Submitted July 2, 1996.

Decided Feb. 14, 1997.

Patrick T. Ryan, Philadelphia, for Shea.

Joseph W. Fullem, Jr., Philadelphia, for Robert M. McMahon.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

ZAPPALA, Justice.

This case involves the application of our decision in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 587 A.2d 1346 (1991), cert. denied, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991), to a legal malpractice action based upon alleged attorney negligence in the drafting and execution of a property settlement agreement in a domestic relations matter.

Appellee, Robert McMahon, and Janet McMahon, now Janet Marshall, were married in 1976. Three children were born of the marriage. In September, 1986, the couple separated. Mr. McMahon thereafter retained Appellants, John G. Shea, Phyllis McCormick Shea, Michael S. Dinney, and Shea and Shea, a partnership, to represent him in the divorce proceedings. In January, 1987, the trial court ordered Mr. McMahon to pay $791.00 per week to his wife and children. Mr. McMahon appealed and, prior to a hearing, he and his wife entered into a written settlement agreement dated March 31, 1987. The agreement provided that half of the weekly amount was deemed child support and the other half was deemed alimony. The only provision for termination of these payments was a clause referring to the time when "the youngest living child reaches the age of twenty-one, is emancipated or finishes college, whichever occurs last." Mr.McMahon also

agreed to provide health insurance coverage during the period he was obligated to pay support.[1]

Mrs. McMahon subsequently filed a complaint in divorce. Upon advice of counsel, the parties entered into a stipulation wherein the previous agreements would be incorporated but not merged into the final divorce decree.[2]   Approximately two months after the divorce decree had been entered, Mrs. McMahon remarried.   On behalf of Mr. McMahon, Appellants filed a petition to terminate the order requiring payment of alimony on the ground that such obligation was extinguished by the provisions of the Divorce Code. The trial court denied the petition, holding that the parties' agreement had survived the decree of divorce ending the marriage.   The court further directed Mr. McMahon to pay alimony until the youngest child became twenty-one, was emancipated or finished college.   The Superior Court affirmed.   *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360 (1992).   We denied allocatur.

Mr. McMahon thereafter filed a civil complaint against Appellants, alleging that their conduct in failing to merge his alimony agreement with the final divorce decree was a breach of their duty to exercise reasonable care, skill and diligence on his behalf.   Specifically, the complaint alleged that Appellants advised Mr. McMahon with respect to a stipulation to provide that the agreement be incorporated but not merged with the

1.   Mr. McMahon and his wife executed an Agreed Order dated July 22, 1987, which reiterated the weekly support payments and the obligation to provide health insurance coverage.   On December 4, 1987, an Amended Agreed Order was executed which repeated the aforementioned provisions.   On that same date, the parties entered into a separate Property Settlement Agreement which partially amended the March 31, 1987 settlement agreement to include that Mr. McMahon had further agreed to provide his former spouse with an automobile for as long as he was obligated to pay support.

2.   The decree provided in pertinent part as follows:
"AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED, pursuant to Pa.R.C.P.1920.1 et seq., at 26–1980, 23 P.S. § 101 et seq., the divorce code and amendments thereto, that the terms, provisions, and conditions of . . . certain property agreements dated MARCH 31, 1987, MAY 9, 1987, JULY 26, 1987, [and] DEC. 4, 1987 . . . [are] hereby incorporated into this decree and order by reference as fully as though the same were set forth at length.   Said agreement[s] shall not merge with but shall survive this decree and order."

divorce decree; that after the divorce decree was entered and Mrs. McMahon remarried, Appellants advised Mr. McMahon that the amended March 31, 1987 agreement and the December 4, 1987 Amended Agreed Order merged with the existing January 30, 1987 original support order and thereby constituted court-ordered alimony which was terminable by § 3701(e)[3] of the Divorce Code;[4] and, that as a result of Appellants' negligence, Mr. McMahon sustained injury and loss including alimony amounts paid to his former wife after her remarriage and sums expended by him in obtaining a reversal of an adverse judgment dismissing his petition to vacate spousal support including attorney's fees and costs. Mr. McMahon also asserted that because Appellants continually failed to inform him of their failure to merge the alimony agreement with the final divorce decree, and concealed the true reason for the dismissal of the alimony termination petition, he was entitled to exemplary damages.

Relying on our decision in *Muhammad*, the trial court sustained Appellants' preliminary objections in the nature of a demurrer and dismissed the complaint. Based upon the disposition of the issue addressed in this appeal, the trial court did not dispose of Appellants' preliminary objection that the complaint failed to state a claim upon which relief may be granted with respect to exemplary damages. An *en banc* panel of the Superior Court reversed the trial court's order. *McMahon v. Shea and Shea, et al.*, 441 Pa.Super. 304, 657 A.2d 938 (1995). Writing for the majority, Judge Wieand found that the policy set forth in *Muhammad* was not applicable where the attorneys' alleged negligence does not lie in the judgment regarding the amount to be accepted or paid in a settlement, but rather lies in the failure to advise a client of

3. Section 3701(e) provides in relevant part that "remarriage of the party receiving alimony shall terminate the award of alimony." 23 Pa.C.S. § 3701(e).

4. Mr. McMahon asserted that when the courts found in Mrs. McMahon's favor, Appellants informed him that the courts were improperly applying § 3105(c) of the Divorce Code to the property settlement agreements which pre-dated the effective date of that section. The Superior Court rejected this argument.

well-established principles of law and the impact of a written agreement. In so holding, the Superior Court expressly overruled its decision in *Miller v. Berschler*, 423 Pa.Super. 405, 621 A.2d 595 (1993). Judge Cavanaugh filed a dissenting opinion in which he found that *Muhammad* was indistinguishable from the instant case and therefore the doctrine of stare decisis required the court to apply it.

The standard for reviewing preliminary objections in the nature of a demurrer is limited. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Mahoney v. Furches*, 503 Pa. 60, 66, 468 A.2d 458, 461–62 (1983).

We have held that an aggrieved client must establish three elements in order to recover for legal malpractice: (1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff. *Rizzo v. Haines*, 520 Pa. 484, 499, 555 A.2d 58, 65 (1989).

Appellants contend that our decision in *Muhammad* prohibits a disgruntled client from suing his attorney for malpractice involved in the negotiation of a settlement. In *Muhammad,* the plaintiffs, following negotiations, had agreed to accept the sum of $26,500 in full settlement of their medical malpractice claim arising from the death of their infant son. They subsequently became dissatisfied with the settlement amount, however, and commenced a legal malpractice action against their lawyers. The trial court sustained preliminary objections, concluding that the action was barred by the doctrine of collateral estoppel. The Superior Court reversed, finding that collateral estoppel did not preclude the subsequent legal malpractice claim.

Although our Court agreed that collateral estoppel did not bar the legal malpractice claim, we concluded that the plaintiffs failed to allege sufficient facts which, if proved, would entitle them to relief. Recognizing our longstanding public policy of encouraging settlements, we held that a dissatisfied plaintiff may not file suit against his attorney following a settlement to which he agreed, unless that plaintiff can establish that he was fraudulently induced to settle the original action. *Muhammad,* 526 Pa. at 546, 587 A.2d at 1348. We further stated,

> [i]t becomes obvious that by allowing suits such as this, which merely "second guess" the original attorney's strategy, we would permit a venture into the realm of the chthonic unknown. It is impossible to state whether a jury would have awarded more damages if a suit had been filed against another potential party or under another theory of liability. It is indeed possible that a smaller verdict would have been reached or a defense verdict ultimately would have been rendered. Thus, sanctioning these "Monday-morning quarterback" suits would be to permit lawsuits based on speculative harm; something with which we cannot agree.

*Id.* at 553, 587 A.2d at 1352.

This reasoning has no application to the facts of the instant case. There is no element of speculation as to whether a jury would return a verdict greater than the amount recovered by a settlement. Also, Mr. McMahon is not attempting to gain additional monies by attacking the value that his attorneys placed on his case. Instead, Mr. McMahon is contending that his counsel failed to advise him as to the possible consequences of entering into a legal agreement. The fact that the legal document at issue had the effect of settling a case should not exempt his attorneys from liability. Prior to *Muhammad,* we held that the "necessity for an attorney's use of ordinary skill and knowledge extends to the conduct of settlement negotiations." *Rizzo v. Haines,* 520 Pa. at 499, 555 A.2d at 65 (1989). We further stated that "an attorney may not shield himself from liability in failing to

exercise the requisite degree of professional skill in settling the case by asserting that he was merely following a certain strategy or exercising professional judgment. Rather, the importance of settlement to the client and society mandates that an attorney utilize ordinary skill and knowledge." *Id.* at 500, 555 A.2d at 65–66.

It appears that confusion has arisen in this area of the law due to the unwarranted expansion of *Muhammad* in *Miller v. Berschler*, 423 Pa.Super. 405, 621 A.2d 595 (1993). In *Miller*, plaintiff/husband had entered into a property settlement agreement pursuant to which he agreed to pay alimony to his wife until his retirement, his wife's remarriage or the death of either party. The settlement agreement did not address the wife's possible cohabitation with another adult male. After a decree of divorce was entered, the wife cohabited with another man. The court denied the husband's petition to terminate his alimony payments on the ground that cohabitation was not specified in the agreement as an event which would cause alimony to terminate. The husband subsequently filed a malpractice action against his attorneys.

The trial court granted summary judgment in favor of the attorneys on the ground that *Muhammad* foreclosed legal malpractice actions based on negligence and/or contract principles when a settlement was involved. The Superior Court affirmed, finding that the rule of *Muhammad* was "well nigh absolute." *Id.* at 407, 621 A.2d at 596. This interpretation is erroneous. As noted by Judge Wieand in his dissenting opinion in *Miller*, "[t]he policy which encourages settlements of law suits does not operate to relieve a lawyer from a duty to inform his or her client of all relevant considerations before the client enters and signs a complex legal agreement." *Id.* at 416, 621 A.2d at 601. Finding *Miller* and the instant case to be based upon similar facts, the Superior Court here expressly overruled *Miller*. We agree and, to the extent that they present the same issue, we expressly overrule those cases relying on *Miller*.

In summary, we find that the analysis of *Muhammad* is limited to the facts of that case. The laudable purpose of

reducing litigation and encouraging finality would not be served by precluding the instant action. Mr. McMahon merely seeks redress for his attorneys' alleged negligence in failing to advise him as to the controlling law applicable to a contract. Based on the foregoing, it is clear that Mr. McMahon has set forth a cause of action for legal malpractice and the preliminary objections as to that cause of action should have been dismissed.

The order of the Superior Court is affirmed.

CAPPY, J., files a concurring opinion in which CASTILLE and NEWMAN, JJ., join.

CAPPY, Justice, concurring.

I join the majority except to the extent that the majority limits this court's decision in *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 587 A.2d 1346 (1991) to the facts of that case. I write separately to emphasize the continuing need for, and validity of, this court's decision in *Muhammad.*

Today, the majority holds that when counsel fails to advise a client as to the controlling law applicable to a settlement contract, he may be subject to a malpractice claim based on a theory of negligence. In doing so, the court properly draws the legally relevant distinction between a challenge to an attorney's professional judgment regarding an amount to be accepted or paid in settlement of a claim, and a challenge to an attorney's failure to correctly advise his client about well established principles of law in settling a case. This is a reasonable and justifiable distinction. However, in addressing this issue, the majority steps beyond merely distinguishing *Muhammad,* and limits *Muhammad* to the facts of that case. To the contrary, while the case *sub judice* may be distinguishable from *Muhammad, Muhammad* is as necessary and valid today as it was when rendered only five years ago, and deserves no such limitation.

In *Muhammad,* plaintiffs Pamela and Abdullah Muhammad accepted a settlement agreement terminating their medical

malpractice action against, inter alia, Children's Hospital for the death of their son. Subsequently, the Muhammads became dissatisfied with the settlement agreement and believed that the monies recovered pursuant to the agreement were insufficient. After a failed attempt to renegotiate the settlement, the Muhammads sued their attorneys for, inter alia, negligence and breach of contract. This court held that dissatisfied plaintiffs may not file a suit against their attorneys following a settlement to which they agreed, based on negligence and/or contract principles, unless the plaintiffs can establish that they were fraudulently induced to settle the original action.

Our decision in *Muhammad* was based on this Commonwealth's strong and historic public policy of encouraging settlement. *Muhammad* was also forged with the similarly desirable policies of reducing litigation and encouraging an end to disputes in mind. These public policies, set forth in more detail in *Muhammad*, are as of equal import today as they were five years ago, and, in light of our overcrowded courtrooms, are perhaps of even greater significance. It is axiomatic that allowing plaintiffs to challenge their attorneys' professional judgment regarding settlement amounts, after accepting a settlement agreement, would erode our policy of encouraging settlements, validate client second guessing, promote "litigation concerning litigation," and lead to interminable disputes. Moreover, to allow plaintiffs to sue their attorneys because they are not satisfied with the amounts obtained in settlement would enable plaintiffs to obtain monies from a party, and in a manner in which they were previously unable to secure such funds. To permit such an action is unfair, and, for purposes of judicial economy, unsound. Finality and closure in these situations are not only laudable goals, but after settlement, they become paramount.

In light of these policies and principles, the majority's attempt to limit *Muhammad* to the facts of that case must fail. The policy rationales pronounced in *Muhammad* may offer room for the exception that the majority carves out today; however, the prohibition against suit where a deficien-

134

cy is alleged in a lawyer's exercise of his or her professional judgment remains steadfast and stalwart against the tide of unreasonable and unnecessary legal malpractice litigation.

To reiterate, today the majority draws a needed distinction between holding an attorney accountable to inform a client about the ramifications of existing law and allowing the second guessing of an attorney's professional judgment in an attempt to obtain additional monies, once a settlement agreement has been reached. However, this decision merely creates one exception to this court's otherwise necessary and valid determination in *Muhammad.*

CASTILLE and NEWMAN, JJ., join in this concurring opinion.