**Schnader Harrison Segal & Lewis LLP
v. Popowich**

C.P. of Philadelphia County, July Term 2004, no. 0037.

*David I. Grunfeld,* for plaintiff.
*Joel S. Luber* and *Richard L. Caplan,* for defendant.

ABRAMSON, *J.,* October 17, 2005—Before the court is the joint motion for summary judgment filed by plaintiff Schnader Harrison Segal & Lewis LLP and third-party defendant Albert Momjian against defendant Maury

Popowich. For the reasons set forth below, said motion is denied.

BACKGROUND

This dispute arises from a divorce action, in which plaintiff Schnader Harrison Segal & Lewis LLP (Schnader), represented defendant Maury Popowich from approximately October 1999 to July 2002 during his divorce proceedings. In or about October or November 1999, Popowich's wife at that time, Deena Gerson, allegedly used Popowich's credit card to pay $10,000 for her counsel fees and costs in her divorce action. See Popowich's counterclaim, ¶17. In addition, on or about February 28, 2001, Popowich paid $50,000 to Gerson's attorneys pursuant to a written agreement between himself and Gerson. See Popowich's counterclaim, ¶18. Popowich alleges that he contemporaneously advised his attorney, third-party defendant Albert Momjian, that his agreement to pay $60,000 for Gerson's benefit was contingent upon Momjian's assurance that Popowich would maintain the right to seek recapture of the payment in the equitable distribution or settlement of the divorce action. See Popowich's counterclaim, ¶19.

On March 6, 2002, Popowich and Gerson agreed to a comprehensive settlement before a master to end the divorce action (the settlement). See Popowich's counterclaim, ¶20. The settlement was not in writing, but rather was read orally on the record by Momjian and Gerson's attorney. See Popowich's counterclaim, ¶21. Popowich alleges that, while the settlement was being recited on the record, he interrupted Momjian to verify that Popowich expected Momjian to confirm that each party

was to bear his or her own attorneys' fees and costs incurred in the divorce, including those incurred prior thereto. See Popowich's counterclaim, ¶22. Popowich contends that Momjian responded by expressly agreeing to accomplish this objective. See Popowich's counterclaim, ¶23. Popowich alleges that Momjian breached this oral agreement, and "intentionally recited on the record only that each litigant was to bear his or her own attorneys' fees and costs without clarifying that this requirement applied to the $60,000 in attorneys' fees and costs that Popowich had previously parted with to support Gerson's divorce action." See Popowich's counterclaim, ¶24. The final settlement stated that "Each party will pay his or her own counsel fees and expenses." See settlement, March 6, 2002 at 30:20-21. Thus, Popowich contends that he believed that his concern about the reimbursement of $60,000 had been properly addressed. See deposition of Maury Popowich, January 7, 2005 at 35:16-37:21.

Later, when Popowich was transferring his assets to Gerson pursuant to the settlement, he allegedly asked Momjian whether he should offset his transfer by $60,000, to which Momjian responded that he should not. See Popowich's counterclaim, ¶25. On December 9, 2003, Popowich wrote a letter to Gerson demanding the reimbursement of the $60,000, but Gerson refused to return the $60,000 to Popowich. See Popowich's counterclaim, ¶¶27, 28. Thereafter, on February 20, 2004, Popowich filed a petition to enforce equitable distribution settlement, enforce arbitration award, and for reimbursement of attorneys' fees and costs (the petition) in the Court of Common Pleas of Montgomery County, seeking from Gerson reimbursement of the $60,000 pur-

suant to the settlement language. On October 26, 2004, the Montgomery Court denied Popowich's petition, stating that "the phrase 'Each party will pay his or her counsel fees and expenses,' clearly and unambiguously meant as to wife, any counsel fees and costs incurred by her exclusive of the $50,000[1] paid to her pursuant to the [written agreement between Popowich and Gerson regarding the payment of Gerson's counsel fees]."[2]

In the meantime, in July 2004, Schnader brought the present suit against Popowich for collection of unpaid legal fees of over $63,000 arising from its representation of Popowich in the divorce action. See Schnader's complaint. On October 21, 2004, Popowich filed a counterclaim against Schnader for breach of contract alleging that Momjian breached the oral agreement between himself and Popowich regarding the recapture of the $60,000. See Popowich's counterclaim, ¶24. Popowich's counterclaim also alleges that Schnader violated the fiduciary duty that Schnader owed to Popowich inherent in its agreement to provide Popowich with competent legal services. See Popowich's counterclaim, ¶35.

---

1. The Montgomery court did not address in its order the $10,000 that Gerson allegedly charged on Popowich's credit card for her counsel fees.

2. Popowich appealed the denial of his petition. On August 23, 2005, the Superior Court of Pennsylvania affirmed the October 26, 2004 order of the Montgomery court on the grounds that "Popowich waived any right he previously retained to claim a $60,000 credit against the estate by entering into the settlement agreement and subsequent divorce decree without specifically raising this issue." The Superior Court further found that the phrase "will pay his or her own fees" acted prospectively from the settlement agreement. See *Gerson v. Popowich,* no. 3226 EDA 2004.

On November 29, 2004, Popowich filed a third-party complaint against Momjian alleging legal malpractice. Specifically, Popowich alleges that Momjian breached his professional duty owed to Popowich by failing to clarify, during oral recitation of the terms of the settlement, that Gerson would be required to repay the $60,000 that Popowich had advanced to her. See Popowich's third-party complaint, ¶21. Further, Popowich alleges that Momjian did not fully explain to Popowich that the provision regarding responsibility for attorneys' fees and costs might be construed to only have a prospective effect. See Popowich's third-party complaint, ¶¶14, 22.

Schnader and Momjian (collectively, movants) now move for summary judgment on Popowich's counterclaim and third-party complaint, respectively.

## SUMMARY JUDGMENT STANDARD

Pursuant to Pennsylvania Rule of Civil Procedure 1035.2, a party may move for summary judgment in whole or in part as a matter of law:

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

Summary judgment is granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 471, 684 A.2d 137, 140 (1996). Summary judgment may be entered only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Dean v. PennDOT,* 561 Pa. 503, 507, 751 A.2d 1130, 1132 (2000). The record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

## DISCUSSION

Movants seek summary judgment on two grounds. First, they contend that Popowich's claims are barred by the statute of limitations. Second, they contend Popowich's claims arising from dissatisfaction with the settlement are barred by the doctrines set forth in the relevant case law. The court will address each in turn.

### I. *Statute of Limitations*

Movants argue that the statute of limitations should run from the date that the settlement was recited on the record, March 6, 2002, on the basis that Popowich knew at that time that the settlement did not include a specific reference to the recapture of the $60,000. See movants' brief in support of its motion for summary judgment at p. 4. Therefore, they contend that Popowich has acted too late in asserting his counterclaim and third-party com-

plaint. Conversely, Popowich argues that the statute of limitations should begin when he learned of his injury. He argues that he learned of Momjian's negligence only upon receipt of the adverse decision on Popowich's petition by the Montgomery court's order of October 26, 2004. See Popowich's brief in opposition to motion for summary judgment at p. 7. Therefore, he contends that his third-party complaint is not time barred.[3]

The question of whether the statute of limitations has run on a claim is ordinarily a question of law for the trial judge; however, where the issue involves a factual determination, the question is for the finder of fact. *Fiorentino v. Rapoport,* 693 A.2d 208, 219 (Pa. Super. 1997), citing *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992). "Specifically, the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." *Id.*

The court finds that there are issues of material fact regarding the determination of the applicability of the statute of limitations in this matter. The crux of the issue is determining when Popowich was aware, or should have reasonably been aware, that he was injured by Momjian.

---

3. It is noted that Popowich filed his counterclaim on October 21, 2004. The Court of Common Pleas of Montgomery County issued its order on October 26, 2004. Therefore, Popowich filed his counterclaim against Schnader, as opposed to his third-party complaint against Momjian, *before* he learned of the Montgomery court's decision on his petition. Thus, Popowich arguably knew of his cause of action against Schnader before the Montgomery court rendered its decision.

Reasonable minds could differ concerning the point in time that Popowich learned, or should have learned, of his injury. The court cannot determine, as a matter of law, that Popowich knew or should have known, at the time the settlement was recited on the record, that the phrase "Each party will pay his or her own counsel fees and expenses," only acted prospectively from the date of the settlement. Reasonable minds could differ on whether that phrase meant prospectively, retroactively, or both prospectively and retroactively. Therefore, summary judgment is not appropriate.

## II. Muhammad's *Impact on Barring a Claim Arising From Dissatisfaction With the Settlement*

Movants rely on the case of *Muhammad v. Strassburger,* 526 Pa. 541, 587 A.2d 1346 (1991), in support of their claim that Popowich should not be able to bring suit based on his dissatisfaction with the settlement. In *Muhammad,* plaintiffs in a medical malpractice action agreed to accept a monetary settlement from defendants in exchange for dismissing their lawsuit. *Id.* at 547, 587 A.2d at 1349. After they agreed to the settlement, plaintiffs changed their minds and decided that the settlement amount was not enough money. *Id.* Plaintiffs sued their attorneys for legal malpractice because plaintiffs were dissatisfied with the monetary settlement. The Pennsylvania Supreme Court stated that a client cannot sue his attorney for legal malpractice when the client is simply dissatisfied with the terms of the settlement, unless the client can show that he was fraudulently induced to settle the original action. *Id.* at 546, 587 A.2d at 1348. Movants in the present case argue that, since there is no allegation

by Popowich of any fraudulent inducement, his claims should be disallowed.

However, six years later, in *McMahon v. Shea*, 547 Pa. 124, 688 A.2d 1179 (1997), the Pennsylvania Supreme Court expressly limited *Muhammad* to the facts of that case.[4] Furthermore, *Muhammad* is distinguishable from the present case. In the case at bar, Popowich is suing because he is dissatisfied with Momjian's representation by not following his specific directive. He does not claim dissatisfaction with the settlement on any other terms. Instead, Popowich alleges that he relied on Momjian's representations that the phrase in the settlement that "each party will pay his or her own counsel fees" addressed his concern of the reimbursement of the $60,000 from Gerson. Unlike the plaintiffs in *Muhammad,* Popowich did not simply change his mind about the monetary amount of the settlement. Instead, he is claiming that his attorney breached a contractual duty or a duty of care in crafting the settlement agreement itself. See Popowich's brief in opposition to motion for summary judgment at p. 9. For these reasons, movants' reliance on *Muhammad* is misplaced, and their motion for summary judgment is denied.

## CONCLUSION

For all the foregoing reasons, Schnader and Momjian's motion for summary judgment is denied. The court will

---

4. Specifically, the court stated, "It appears that confusion has arisen in this area of the law due to the unwarranted expansion of *Muhammad* . . . In summary, we find that the analysis of *Muhammad* is limited to the facts of that case." *McMahon,* 547 Pa. at 131, 688 A.2d at 1182.

enter a contemporaneous order consistent with this opinion.

## ORDER

And now, October 17, 2005, upon consideration of plaintiff Schnader, Harrison, Segal & Lewis LLP and third-party defendant Albert Momjian's motion for summary judgment, and response thereto, and in accordance with the court's contemporaneously filed opinion, it is hereby ordered and decreed that said motion is denied.