**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| DR. AHLAM KHALIL, | : | No. 24 EAP 2021 |
| | : | |
| Appellant | : | Appeal from the Judgment of |
| | : | Superior Court entered on January |
| | : | 5, 2021 at No. 2549 EDA 2019, |
| v. | : | affirming in part, reversing in part |
| | : | and remanding the Order entered on |
| | : | July 12, 2019 in the Court of |
| GERALD J. WILLIAMS ESQUIRE; BETH | : | Common Pleas, Philadelphia |
| COLE ESQUIRE; WILLIAMS CUKER | : | County, Civil Division at No. 0825 |
| BEREZOFSKY, LLC, | : | May Term, 2013. |
| | : | |
| Appellees | : | ARGUED: December 8, 2021 |

## OPINION

**JUSTICE TODD**                                                        **DECIDED: July 20, 2022**

In this appeal by allowance, we consider whether Appellant's legal malpractice claims against Appellees, her former attorneys, are barred under this Court's decision in *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346 (Pa. 1991), in which we held that a plaintiff may not sue his attorney on the basis of the adequacy of a settlement to which the plaintiff agreed, unless the plaintiff alleges the settlement was the result of fraud. For the reasons set forth below, we hold that certain of Appellant's claims are not barred under *Muhammad*. Accordingly, we reverse, in part, and remand for further proceedings.

The instant case has a long and convoluted history. Appellant, Dr. Ahlam Kahlil, owned a unit in the Pier 3 Condominiums in Philadelphia. Appellant's individual unit was insured by State Farm Fire and Casualty Company ("State Farm"), and the Pier 3

Condominium Association ("Pier 3") was insured under a master policy issued by Travelers Property Casualty Company of America ("Travelers"). In May 2007, Appellant sustained water damage to her unit as a result of a leak in the unit directly above hers, which was owned by Jason and Anne Marie Diegidio. Due to the water damage, Appellant eventually moved out of her unit and stopped paying her condominium fees.

In July 2008, Appellant filed a civil action against State Farm and Travelers, alleging breach of contract and bad faith, and against the Diegidios, alleging negligence (hereinafter, the "Water Damage Case").[1] A year later, Pier 3 filed a separate lawsuit against Appellant for her unpaid condominium fees and charges (hereinafter, the "Fees Case").[2] In that matter, Appellant filed several counterclaims against Pier 3, asserting, *inter alia*, that it failed to properly maintain the common area. She also filed a joinder complaint against the Diegidios, individually and as members of the condominium board,[3] and Wentworth Property Management ("Wentworth"), the company responsible for managing the building.

In April 2010, after the Water Damage Case had been listed for trial, Appellant retained Appellees Gerald J. Williams, Esq., and Beth Cole, Esq., to represent her in that case.[4] In May 2011, prior to trial, Appellant reached a settlement with Travelers for $17,500. In accordance therewith, Appellant was presented with a draft of a general release which provided, *inter alia*, that Appellant "release[d] and forever discharge[d] the

---

[1] *Khalil v. Diegidio, et. al.*, Docket No. 080503145 (Phila. Cnty. Court of Common Pleas).
[2] *Pier 3 Condominium Assoc. v. Khalil*, Docket No. 090701819 (Phila. Cnty. Court of Common Pleas).
[3] Appellant alleged that Jason Diegidio, as president of the condominium association, exerted undue influence to ensure that she would not be compensated for the damage to her unit.
[4] According to Appellees, the three law firms which previously represented Appellant in the case all successfully petitioned to withdraw as counsel. *See* Appellees' Motion for Summary Judgment in the Water Damage Case at 3, ¶ 6.

said Releasee, and the Releasee's insured, **PIER 3 CONDOMINIUM (Releasee's Insured)**, of and from any and all claims." Draft Release in the Water Damage Case (Reproduced Record at 82a) (emphasis original).[5] Appellant, however, was unwilling to sign any release unless it contained specific language that her settlement with Travelers would not prevent her from asserting her counterclaims and joinder claims in the Fees Case. Thus, Appellant maintained that, notwithstanding Appellees' repeated assurances that her settlement with Travelers would have no effect on her claims in the Fees Case, she refused to sign the Draft Release in the Water Damage Case.

As a result, Attorney Cole sent an email to Traveler's counsel, Monica O'Neill, Esq., proposing to include the following language: "This release does not include any claims in connection with Pier 3 Condominium Association Ahlam Khalil v. Jason Diegidio and Anne Marie Diegidio and Jane Doe and Wentworth Property Management, Philadelphia Court of Common Pleas, Docket No. 090701819." Email from Attorney Cole to Attorney O'Neill, 5/16/11 (R.R. at 76a). Attorney O'Neill replied that Travelers was "reluctant to make any reference to the other ligation since they're not involved in it. I have eliminated Pier 3 as a Releasee (since they are not a party in this matter) and have just added an informational sentence about their role as an insured." Email from Attorney O'Neill to Attorney Cole, 5/16/11 (R.R. at 77a). The revised release (hereinafter, "Travelers Release"),[6] identifies Appellant as the "Releasor," Travelers as the "Releasee," and Pier 3 as "Releasee's insured," and provides that Appellant:

> [does] . . . release and forever discharge the said Releasee, of and from any and all claims, including claims of bad faith, demands, damages, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, actions, causes of action, or suits at law or in equity, of whatsoever

---

[5] The Reproduced Record is referred to herein as "R.R."
[6] The release is undated, but the trial court in the instant matter noted that it "is the **only executed** release that exists in the related Water Damage case." Trial Court Opinion, 3/2/20, at 5 (emphasis original).

> kind or nature arising from the incident occurring at **3 North Columbus Boulevard, Philadelphia, Pennsylvania 19106**, which has been reported to have occurred on or about May 25, 2007, as more fully described in **Ahl[a]m Khalil v. The Travelers Property Casualty Company of America, Philadelphia Court of Common Pleas, Docket No. 080503145.** It is acknowledged that the Releasee's insured in the applicable policy of insurance is Pier 3 Condominium.

Travelers Release at ¶ 1 (R.R. at 86a) (emphasis original).

The Travelers Release further provides that it "is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries or damages against Releasee, and Releasee's Insured, and any affiliated or related people or entities, both known and unknown, including future developments thereof, in any way growing out of or connecting with said incident." *Id.* at ¶ 3. Additionally, the Travelers Release states that it "shall be a complete bar to all claims or suits against Releasee, Releasee's Insured, and any affiliated or related people or entities, both known and unknown, for injuries or damages of whatsoever nature resulting from or to result from said incident." *Id.* at ¶ 5. Notably, the release does not contain any language limiting its application to the Water Damage Case. Further, while the Travelers Release contains what purports to be Appellant's signature, she disputes its authenticity, as discussed below.

After settling with Travelers, Appellant proceeded to trial against the remaining defendants − State Farm and the Diegidios − in the Water Damage Case. During trial, Appellant agreed to settle her claims against the Diegidios and State Farm, for $50,000 and $40,000, respectively. On May 20, 2011, the trial court, by the Honorable Frederica Massiah-Jackson, conducted a colloquy on the record, at which Appellant confirmed her agreement to the terms of the settlements, as well as Appellees' agreement to represent Appellant in the Fees Case at no additional fee. Thereafter, the trial court marked the Water Damage Case as settled, and Attorney Cole entered her appearance in the Fees Case.

Almost immediately, Appellant changed her mind about the settlements and refused to sign releases with State Farm and the Diegidios, or accept payments from any of the defendants. As a result, Attorney Cole withdrew her appearance in the Fees Case. On September 30, 2011, the trial court held a status hearing in the Water Damage Case, during which Appellant explained that she objected to the settlements because she believed that the release she signed with Travelers would impair her counterclaims in the Fees Case, despite her attorneys' assurances it would not. Ultimately, the trial court issued an order finding the settlements with State Farm and the Diegidios valid, and directed all defendants to pay their respective settlement amounts to the court for placement in escrow, where it currently remains. Appellant did not appeal that determination.

In April 2012, relying upon the language in the Travelers Release stating that the release barred all claims in connection with the incident that occurred in Appellant's condominium unit, Pier 3 and Wentworth moved to dismiss Appellant's counterclaims in the Fees Case. The trial court, by the Honorable George W. Overton, granted the motion, agreeing that Appellant's counterclaims were precluded by the Travelers Release. The case proceeded to a jury trial on Pier 3's claims for outstanding assessment fees, and, on July 19, 2012, the jury found in favor of Pier 3 for $109,000.

Appellant filed a motion for post-trial relief in the Fees Case, asserting, *inter alia*, that she entered into the Travelers Release through "unilateral mistake, mutual mistake, and/or fraud." Defendant/Counterclaim Plaintiff's Motion for Post-Trial Relief in the Fees Case, 7/30/12, at ¶ 55 (R.R. at 622a). Specifically, Appellant denied signing the Travelers Release, and claimed that the version she did sign contained a note "on the first page of the Settlement Proposal in her own handwriting that it was her understanding that the settlement proposal would in no way affect the additional claims she had against the

Condominium Association and Wentworth" in the Fees Case. *Id.* at ¶ 29. According to Appellant, the release she signed contained the following language at the bottom of the first page, marked by an asterisk: "This release does not include any claims in connection with Pier 3 Condominium Association vs. Ahlam Khalil v. Jason Diegidio and Anne Marie Diegidio and Jane Doe and Wentworth Property Management, Philadelphia Court of Common Pleas, Docket No. 090701819." Unsigned Release with Asterisk in Water Damage Case (R.R. 84a).[7] The trial court denied the motion and entered judgment for Pier 3. Appellant appealed to the Commonwealth Court.[8] In the interim, Appellees moved to withdraw as counsel from the Water Damage Case, and the Commonwealth Court stayed the appeal in the Fees Case pending the disposition of the Water Damage Case.

On January 7, 2013, the trial court granted Appellees' motion to withdraw in the Water Damage Case, and ordered the case "settled, discontinued, and ended." Docket Entry in Water Damage Case (R.R. at 391a). Appellant filed a *pro se* motion for reconsideration, which the court denied. Appellant then filed a separate motion to vacate and/or set aside the stipulation for the 2011 settlements and releases with State Farm and the Diegidios, which the trial court also denied, concluding it lacked jurisdiction to vacate those settlements. Appellant appealed the trial court's orders, but the Superior Court quashed the appeal, finding, *inter alia*, that Appellant's attempt to litigate the validity of the 2011 settlements was untimely. Following the Superior Court's quashal of Appellant's appeal in the Water Damage Case, the Commonwealth Court relisted

_____

[7] Although Appellant suggested in her motion for post-trial relief that the limiting language marked by an asterisk in the release that she signed was "in her own handwriting," Defendant/Counterclaim Plaintiff's Motion for Post-Trial Relief in the Fees Case at ¶ 29, the asterisked language in the release that she submitted as an exhibit is typewritten.
[8] The Commonwealth Court has exclusive appellate jurisdiction over matters relating to not-for-profit corporations, such as Pier 3, and their corporate affairs. *See* 42 Pa.C.S. § 762(a)(5); *Mayflower Square Condo. Ass'n v. KMALM, Inc.*, 724 A.2d 389, 391 n.3 (Pa. Cmwlth. 1999).

Appellant's appeal in the Fees Case. Ultimately, the Commonwealth Court concluded that, by signing the Travelers Release, Appellant had also released her counterclaims against Pier 3 and Wentworth in the Fees Case and, thus, was not entitled to relief.

In May 2013, Appellant filed a praecipe for writ of summons initiating the instant legal malpractice action against Appellees. Appellant filed a complaint on March 29, 2017, asserting claims of legal malpractice based on negligence; legal malpractice based on breach of contract; negligent misrepresentation; breach of contract; and fraudulent misrepresentation. Appellant alleged, *inter alia*, that Appellees failed to exercise ordinary skill and knowledge by allowing her to enter into a settlement agreement in the Water Damage Case – specifically, the Travelers Release – that would preclude her subsequent counterclaims against Pier 3 in the Fees Case; that Appellees breached their contractual duty to exercise ordinary skill and knowledge in representing her in connection with the Fees Case; that Appellees repeatedly and erroneously advised her that the Travelers Release would not affect her counterclaims in the Fees Case; and that Appellees breached their contractual duty to diligently and competently represent her interests in both the Water Damage and Fees Cases. Complaint at ¶¶ 39, 44, 45, 53, 64 (R.R. at 117a, 119a, 121a, 123a).

Appellant additionally alleged that Appellees fraudulently induced her into settling her lawsuit "at a discounted rate by agreeing to represent her at no cost" in the Fees Case, and then subsequently withdrawing as her counsel, *id.* at ¶ 39, and that "[t]he Release submitted to the [trial] court was different from the one signed by [Appellant] which had an asterisk," *id.* at ¶ 77.

Appellees responded by filing a motion for summary judgment, alleging that Appellant's "real" objective in filing her legal malpractice suit was "to revisit the amount of the settlements she agreed to [with State Farm and the Diegidios] in the [Water Damage]

case." Motion for Summary Judgment at ¶ 39 (R.R. at 195a). Based on this assertion, Appellees argued that Appellant's claims were barred by this Court's decision in *Muhammad.*

In *Muhammad*, the plaintiffs retained a law firm to represent them in a medical malpractice action against a hospital and its physicians following the death of their child. The law firm negotiated a settlement, which the plaintiffs orally accepted, but, prior to signing a written agreement, changed their minds. The law firm representing the defendants filed a rule to show cause why the settlement agreement should not be enforced. The trial court enforced the agreement, ordered the defendants to pay the settlement funds, and instructed the prothonotary to mark the case settled. The plaintiffs hired new counsel and appealed the trial court's order, which the Superior Court affirmed.

Thereafter, the plaintiffs filed a legal malpractice case against the law firm that represented them in the medical malpractice case. The trial court granted the law firm's preliminary objections in the nature of a demurrer, and dismissed the action on the grounds that it was barred by the doctrine of collateral estoppel, based on the Superior Court's decision in the medical malpractice case. The Superior Court reversed, holding that the preliminary objections should not have been affirmed on the basis of collateral estoppel. This Court reversed the order of the Superior Court. Although we agreed that the plaintiffs' legal malpractice action was not barred by the doctrine of collateral estoppel, we held that the law firm's preliminary objections were properly granted due to the plaintiffs' failure to state a claim:

> This case must be resolved in light of our longstanding public policy which encourages settlements. Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence

and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

*Muhammad*, 587 A.2d at 1348. We elaborated:

> [W]e foreclose the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies. To permit otherwise results in unfairness to the attorneys who relied on their client's assent and unfairness to the litigants whose cases have not yet been tried. Additionally, it places an unnecessarily arduous burden on an overly taxed court system.
>
> We do believe, however, there must be redress for the plaintiff who has been *fraudulently induced* into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement.

*Id.* at 1351 (emphasis original). The limited circumstance under which a plaintiff may file an action against his attorney challenging the adequacy of a settlement into which he was fraudulently induced to enter has been referred to as the *Muhammad* "fraud exception." In *Muhammad*, we specifically observed that Mrs. Muhammad, after agreeing to settle the lawsuit in exchange for $26,500, "decided – for reasons unknown at that time – that it just was not enough money." *Id.* at 1349.

Subsequently, in *McMahon v. Shea*, 688 A.2d 1179 (Pa. 1997) (plurality), this Court clarified that *Muhammad* does not bar a plaintiff's action against his attorney when the action does not challenge the amount of a settlement, but is based on the attorney's alleged failure to correctly advise the plaintiff regarding the law impacting a settlement. In *McMahon*, the plaintiff husband ("Husband") retained the defendant attorneys ("Defendants") to represent him in divorce proceedings. Husband was ordered to pay $791 per week to his wife ("Wife") and children. Husband appealed the order, and, prior to a hearing, he and Wife entered into a written settlement agreement which provided that

half of the sum Husband had been ordered to pay would be deemed child support, and the other half alimony. Wife subsequently filed a divorce complaint, and the parties, upon the advice of counsel, entered into a stipulation under which the previous agreement would be incorporated, but not merged, into the final divorce decree. After the divorce was final, Wife remarried, and Defendants, on behalf of Husband, filed a petition to terminate the order requiring the payment of alimony. The trial court denied the petition, holding that the parties' agreement survived the decree of divorce, and ordered Husband to pay alimony until the youngest child turned 21, was emancipated, or finished college. On appeal, the Superior Court affirmed.

Thereafter, Husband filed a civil complaint against Defendants, alleging that, by failing to merge the alimony agreement into the final divorce decree, they breached their duty to exercise reasonable care, skill, and diligence. Defendants filed preliminary objections, and the trial court, relying on *Muhammad*, granted the objections and dismissed Husband's complaint. The Superior Court reversed, holding *Muhammad* is not applicable where the "alleged negligence . . . involve[s] the failure to advise the client about well established principles of law and the impact of the agreement upon the client's future obligations." *McMahon v. Shea*, 657 A.2d 938, 942 (Pa. Super. 1995).

On appeal, this Court affirmed the Superior Court's decision. In an opinion announcing the judgment of the court ("OAJC"), Justice Zappala, joined by Chief Justice Flaherty and Justice Nigro, explained that the reasoning of *Muhammad*:

> has no application to the facts of the instant case. There is no element of speculation as to whether a jury would return a verdict greater than the amount recovered by a settlement. Also, [Husband] is not attempting to gain additional monies by attacking the value that his attorneys placed on his case. Instead, [Husband] is contending that his counsel failed to advise him as to the possible consequences of entering into a legal agreement.

*McMahon*, 688 A.2d at 1182. The OAJC concluded that "the analysis of *Muhammad* is limited to the facts of that case," and the "laudable purpose of reducing litigation and encouraging finality would not be served by precluding the instant action." *Id.*

Justice Cappy, in a concurring opinion joined by Justices Castille and Newman, disagreed with the OAJC's suggestion that *Muhammad* should be limited to the facts of that case, and suggested a continuing need for *Muhammad* in light of the policy on which it was based. However, he conceded:

> Today, the majority holds that when counsel fails to advise a client as to the controlling law applicable to a settlement contract, he may be subject to a malpractice claim based on a theory of negligence. In doing so, the court properly draws the legally relevant distinction between a challenge to an attorney's professional judgment regarding an amount to be accepted or paid in settlement of a claim, and a challenge to an attorney's failure to correctly advise his client about well established principles of law in settling a case. This is a reasonable and justifiable distinction.

*Id.* at 1183 (Cappy, J., concurring). Thus, all six Justices who participated in *McMahon* agreed that *Muhammad* is inapplicable where a plaintiff's claim is based not on the amount of a settlement, but on counsel's purported failure to correctly advise him regarding the applicable law pertaining to a settlement.

Returning to the case *sub judice*, significantly, in their motion for summary judgment based on *Muhammad*, Appellees focused on Appellant's putative challenge to the settlement amount in the Water Damage Case; they did not address Appellant's allegations that they were negligent in allowing her to enter into a settlement agreement in that case and sign a release with Travelers that, despite Appellees' alleged assurances to the contrary, barred her counterclaims against Pier 3 in the Fees Case.

Appellees further averred that Appellant's allegations of fraud were previously rejected by the Superior Court and the Commonwealth Court, and, thus, were barred by

the doctrine of collateral estoppel. Moreover, Appellees argued that, even if collateral estoppel did not apply, Appellant failed to demonstrate the required elements to establish a fraud claim.

On July 12, 2019, the trial court, by the Honorable Angelo Foglietta, granted summary judgment in favor of Appellees and dismissed Appellant's action with prejudice, finding there were no genuine issues of material fact, and that Appellant's claims were barred as a matter of law under *Muhammad*, reasoning that "Appellant had consented to a settlement and then later attempted to second guess the amount of the settlement." Trial Court Opinion, 3/2/20, at 20. The court further determined that the *Muhammad* fraud exception did not apply because Appellant's claims that she did not actually sign the Travelers Release, but signed a different version of the release and that the releases somehow were switched, were previously rejected by the courts, and, thus, were precluded under the doctrine of collateral estoppel.[9] *Id.* at 21-22.

Notably, like Appellees in their motion for summary judgment, the trial court did not address Appellant's claims that Appellees were negligent in allowing her to enter into a settlement agreement in the Water Damage Case that would preclude her counterclaims against Pier 3 in the Fees Case, and, moreover, in specifically advising Appellant that the Travelers Release would not impact her counterclaims.

Appellant appealed to the Superior Court, asserting that the trial court erred in finding all of her claims barred by *Muhammad.* She stressed that she was not challenging the amount of her settlement in the Water Damage Case, but, rather, had alleged that Appellees gave her incorrect legal advice concerning the scope and effect of the Travelers Release. In support of her argument, Appellant relied on this Court's decision

---

[9] The court suggested that the only way Appellant could challenge the lower courts' determination that the Travelers Release was enforceable would be "to plead and prove extrinsic fraud relating to procedural matters," which she failed to do. Trial Court Opinion, 3/2/20, at 22.

in *McMahon*, *supra*, as well as the Superior Court's decision in *Collas v. Garnick*, 624 A.2d 117 (Pa. Super. 1993), wherein the appellant signed a general release as part of the settlement of her motor vehicle personal injury action based on her attorney's incorrect assurance that the release would not preclude subsequent action against the manufacturer of the car's seat belt system. The *Collas* court found that *Muhammad* did not bar the appellant's legal malpractice action because the appellant alleged that she entered into the settlement as a result of her attorney's poor legal advice, and was not challenging the adequacy of the settlement amount.

Appellant additionally maintained that the trial court erroneously dismissed her fraud claim on the basis of collateral estoppel because her claim that she signed a different version of the release, which was switched with the Travelers Release submitted to the court, had not, in fact, been resolved in a prior action. *See* Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 10/20/19, at 5.

The Superior Court, in a unanimous, published opinion, affirmed in part, reversed in part, and remanded. *Khalil v. Williams*, 244 A.3d 830 (Pa. Super. 2021). With regard to Appellant's allegations of fraud against Appellees, the Superior Court concurred with Appellant that the issue "was not actually litigated in the [Fees Case], and therefore, is not estopped from being raised in this matter," and it reversed the trial court's order in this respect and remanded. *Id.* at 844.

With respect to Appellant's remaining claims, the Superior Court acknowledged the holdings of *Collas* and *McMahon*, and agreed that *Muhammad* does not bar claims of attorney negligence in a settled case where the claims are based not on the amount of settlement, but on the attorney's failure to advise the client of the consequences of

entering the settlement. *Khalil*, 244 A.3d at 839-40.[10] Nevertheless, the court held that Appellant failed to plead in her complaint facts that fit within the *Collas* and *McMahon* exception.

The Superior Court began by quoting the following select paragraphs from Appellant's complaint:

> 20. After [Appellant] refused to sign the release as presented to her by [Attorneys] Williams and Cole, [Attorney] Cole presented [Appellant] with a different settlement release that contained an asterisk which [Attorney] Cole purported that the release in [the water damage case] would not preclude[] [Appellant] from asserting [her] counterclaims and joinder action in [the Assessment fees case].
>
> 21. Relying on the assurance and [advice] of [Attorneys] Williams and Cole, [Appellant] signed the aforementioned release containing an asterisk.
>
> 31. To [Appellant's] dismay, the release presented by counsel for [Pier 3 and Wentworth] was not the one presented to [Appellant] by [Attorney] Cole.
>
> 32. The release presented by counsel for [Pier 3 and Wentworth] in the summary judgment motion in the [Fees Case] did not contain the aforementioned asterisk and was not the one signed by [Appellant].

---

[10] The Superior Court also noted that, in *Kilmer v. Sposito*, it "distinguished an attorney's professional judgment in negotiating a settlement from the attorney's failure to advise a client correctly on the law pertaining to the client's interests, recognizing that under the latter scenario, the plaintiff's claims are not barred by *Muhammad*." *Khalil*, 244 A.3d at 840 (citing *Kilmer v. Sposito*, 146 A.3d 1275, 1279-80 (Pa. Super. 2016)); *see also Banks v. Jerome Taylor & Assocs.*, 700 A.2d 1329, 1332 (Pa. Super. 1997) (Where a litigant merely wishes to second guess a decision to settle "due to speculation that he or she may have been able to secure a larger amount of money, *i.e.* 'get a better deal,' the *Muhammad* rule applies." Where, however, "a settlement agreement is legally deficient or if an attorney fails to explain the effect of a legal document, the client may seek redress from counsel by filing a malpractice action sounding in negligence.").

33. It became evident to [Appellant] that [Attorneys] Cole and Williams and/or counsel for [Pier 3 and Wentworth] **switched the release**. Nevertheless, [Appellant] would not have entertained a release without the assurances from [Attorneys] Williams and Cole that it would not affect her counterclaims and joinder claim in [the Fees Case].

*Id.* at 840 (alterations and emphasis original).

The Court then reasoned:

As these averments show, Appellant pled facts alleging that she was the victim of fraud. More specifically, she alleged that the Travelers release that she signed was intentionally switched with one that she did not sign, thus leading to her claims in a separate case to be dismissed due to the fraud. While claims of fraud are not barred under *Muhammad*, they also cannot be styled as claims sounding in negligence and breach of contract after a settlement has been accepted by the client.

While she does allege that her attorneys gave her flawed legal advice about the effect of signing the Travelers release, Appellant then alleges that she refused to sign the release unless the language she wanted was added. [Complaint] at Paragraphs 19-20. Then, after she signed a release with the language she demanded, that release was intentionally switched and later used against her in a separate case. *Id.* at Paragraph 33. Put differently, Appellant is not alleging that it is her attorneys' negligence that caused her damages; instead, she is alleging that her damages−dismissal of her claims in a separate case−were caused by fraud.

*Id.* at 840-41.

Finally, the court distinguished the instant case from *Collas* and *McMahon*, noting that, in those cases,

neither of the plaintiffs . . . alleged conduct of the sort that Appellant has alleged. Instead, in both of those cases, the plaintiffs claimed that their attorneys failed to correctly advise them about well-established principles of the law in settling the case, and that it was these misstatements about the effect of the settlements that placed the plaintiffs' claims outside the scope of the *Muhammad* bar against claims of negligence

against a former attorney after a settlement has been reached.

*Id.* at 841. The Superior Court ultimately concluded that "*Muhammad* applies to bar [Appellant's] claims sounding in negligence and contract against her former attorneys and their law firm," and it affirmed the trial court's dismissal of the first four counts of Appellant's complaint. *Id.*

Appellant filed a petition for allowance of appeal with this Court, and we granted review of the following issues:

> (1) Should the Court overturn *Muhammad v. Strassburger* . . . which bars legal malpractice suits following the settlement of a lawsuit absent an allegation of fraud?
>
> (2) Did the Superior Court misconstrue the averments in [Appellant's] complaint and err as a matter of law when it held that [her] legal malpractice claims were barred by *Muhammad v. Strassburger*?

*Khalil v. Williams*, 260 A.3d 77 (Pa. 2021) (order).

Appellant argues that the Superior Court erred as a matter of law when it relied on *Muhammad* to affirm the trial court's grant of Appellees' motion for summary judgment and its dismissal of her claims. Specifically, she maintains that her claims were based upon Appellees' erroneous legal advice regarding the scope and effect of the Travelers Release, rather than her dissatisfaction with the amount of her settlement, and she contends that the lower courts mischaracterized her claims in this regard. She acknowledges that she alleged both fraud and negligence in her complaint, but asserts that the Superior Court "cherry-picked paragraphs from the complaint that address [her] fraud claims," Appellant's Brief at 35, ignoring most of the complaint's factual allegations related to her claims of legal malpractice, negligent misrepresentation, and breach of contract. *Id.* at 48. Appellant further submits that she presented ample evidence that

Appellees breached their duty to her in negotiating the Travelers Release and advising her that it would not impact her subsequent claims in the Fees Case.

Appellant additionally suggests that this Court should overturn *Muhammad* due to "confusion and uncertainty about the viability and proper application" of the rule in the lower courts. *Id.* at 55. In support of her argument, she compares an unpublished non-precedential Superior Court decision with a precedential decision "to illustrate the divergence of views about *McMahon* revealed in both published and unpublished opinions."[11] *Id.* at 56 n.13. Appellant further avers that the *Muhammad* doctrine is unnecessary in light of the high burden of proof; that it unfairly provides an advantage to trial lawyers but not to non-trial lawyers; and that it has been rejected by most other jurisdictions.

Conversely, Appellees maintain that the lower courts properly dismissed Appellant's claims pursuant to *Muhammad*, stressing that Appellant's "decade-long obsessive attempts to relitigate the validity of the settlements and release through a multiplicity of lawsuits is exactly the type of socially unproductive, burdensome and needless litigation the Supreme Court condemned and expressly foreclosed in *Muhammad*." Appellees' Brief at 12. Appellees dispute Appellant's assertion that the Superior Court misconstrued her complaint to conclude that she did not allege negligence by her attorneys, and, indeed, they contend that it is clear from the record that Appellant's "true objective in bringing this professional liability claim was to revisit the amount of the

---

[11] Appellant compares the unpublished decision in *Abeln v. Eidelman,* 2015 WL 7573233, *2 (Pa. Super. 2015) ("*McMahon* did not serve to limit *Muhammad* to its facts, and *Muhammad* remains as controlling precedent until a true majority of the supreme court rules otherwise"), with the published decision in *Kilmer*, 146 A.3d at 1280 ("Even without supplying binding precedent, *McMahon* provides helpful guidance on the issue at bar, for the concurrence agreed with the [OAJC] where it distinguished 'between a challenge to an attorney's professional judgment regarding an amount to be accepted or paid in settlement of a claim, and a challenge to an attorney's failure to correctly advise his client about well established principles of law in settling a case. . . .'").

settlements she agreed to in the [Water Damage] case, rather than any dissatisfaction with [Appellees'] handling of the underlying litigation." *Id.* at 15. Accordingly, Appellees contend that the instant matter is distinguishable from both *Collas* and *McMahon*, wherein the litigants claimed that their attorneys provided incorrect advice regarding the "well-established principles of law in settling the case[s]," which placed the claims "outside the bounds of *Muhammad*." *Id.* at 23. Appellees reiterate that Appellant alleged that she was the victim of fraud by claiming that the release she actually signed was switched with the Travelers Release.

Appellees further argue that this Court's decision in *Muhammad* should not be overturned, as it promotes finality in litigation and ensures that judicial resources are not wasted, and they suggest that overturning *Muhammad* will result in a surge of litigation. Nevertheless, Appellees are not opposed to a clarification of the exceptions to the *Muhammad* doctrine. *Id.* at 33.[12]

Preliminarily, we note that, in reviewing the grant or denial of a motion for summary judgment, this Court's standard of review is *de novo,* and our scope of review is plenary. *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 649 (Pa. 2020). We have explained that a trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* at 649-50. It is the moving party's burden to demonstrate the absence of any

---

[12] The Pennsylvania Bar Association, the Philadelphia Bar Association, and the Allegheny County Bar Association filed a joint *amicus* brief in support of Appellees. *Amici* submit that *Muhammad* serves an important public policy purpose and, thus, should stand. However, they contend that, because the Superior Court found that Appellant's action sounded in fraud, which is an exception to the *Muhammad* rule, *Muhammad* does not apply to the facts of this case, and there is no "compelling need" for this Court to overturn *Muhammad* at this juncture. *Amicus* Brief at 4-5.

issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. *Id.* at 650. The trial court must also resolve any doubts as to the existence of a genuine issue of material fact against the moving party and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." *Id.* (citation omitted). An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion. *Id.* Under that standard, and following a comprehensive review of Appellant's March 2017 complaint, we conclude that the Superior Court erred in holding that Appellant's negligence and breach of contract claims were barred under *Muhammad*.

As noted above, in holding Appellant's claims were barred under *Muhammad*, both the trial court and the Superior Court focused on select, fraud-based averments in Appellant's complaint wherein she asserted that she did not sign the Travelers Release, but instead signed a different version of a release that she claims was switched with the Travelers Release. The lower courts ignored, however, other averments in Appellant's complaint which did not allege fraud, but, rather, alleged legal malpractice by Appellees in allowing Appellant to enter into a settlement agreement in the Water Damage Case that subsequently precluded her from raising her desired claims in the Fees Case, while repeatedly advising Appellant that the settlement agreement would not preclude those claims.

For example, Appellant specifically alleged that:

> 39. [Appellees] failed to exercise ordinary skill and knowledge in representing [Appellant] as attorneys . . . by allowing her to enter into a settlement agreement that would preclude her counterclaims against [Pier 3 in the Fees Case].
>
> * * *

44. [Appellant] entered into two different contracts with [Appellees] to diligently and competently represent her interests in [the Water Damage Case and the Fees Case].

45. [Appellees] breached the contracts and failed to exercise ordinary skill and knowledge in representing [Appellant] in the above-mentioned actions by allowing her to enter into a settlement agreement that would preclude her counterclaims against [Pier 3 in the Fees Case].

* * *

53. [Appellees] repeatedly assured [Appellant] that none of the settlement agreement [in the Water Damage Case] will prejudice [Appellant's] recognizable defenses and claims in the Pier 3 [Fees C]ase.

* * *

64. [Appellees] breached the contracts and failed to exercise ordinary skill and knowledge in representing [Appellant] in the above-mentioned actions as her attorneys by allowing her to enter into a settlement agreement that would preclude her counterclaims against [Pier 3 in the Fees Case].

Complaint at ¶¶ 39, 44, 45, 53, 64.

These claims, which do not challenge the amount of the settlement, but instead are based on Appellees' alleged failure to properly advise Appellant of the consequences of signing the Travelers Release, are precisely the type of claims that the Superior Court recognized were permissible in *Collas, Kilmer, and Banks*, *supra*, and which this Court held are permissible in *McMahon*, *supra*. Although the Superior Court purported to distinguish the instant case from *Collas* and *McMahon* on the basis that, in those cases, the plaintiffs alleged only negligence and not fraud, the court offered no legal support for its determination in this regard. Indeed, a plaintiff is permitted to assert alternative causes of action. *See* Pa.R.Civ.P. 1020(c) ("Causes of action and defenses may be pleaded in the alternative.").

Moreover, we find the Superior Court's statement that, "[w]hile claims of fraud are not barred under *Muhammad*, they also cannot be styled as claims sounding in

negligence and breach of contract after a settlement has been accepted by the client," *Khalil*, 244 A.2d at 840, to be confusing at best. If Appellant's claims are based on fraud, regardless of whether they also may be couched in negligence or contract, they are not barred by *Muhammad*. *See Muhammad*, 587 A.2d at 1351. Likewise, if Appellant's claims are based on negligence and challenge Appellees' legal advice, those claims also are not precluded by *Muhammad*. *See McMahon*, 688 A.2d at 1182 (OAJC); *id.* at 1183 (Cappy, J., concurring).

Finally, as our review of Appellant's complaint demonstrates that she was not merely challenging the amount of her settlement in the Water Damage Case, but rather alleged that Appellees provided incorrect legal advice regarding the scope and effect the Travelers Release, we hold that *Muhammad*'s bar on lawsuits based on the adequacy of a settlement is not implicated in this case. Accordingly, we conclude further consideration of the wisdom of *Muhammad* is unnecessary at this time.[13]

For all of these reasons, we reverse the Superior Court's decision to the degree it affirmed the trial court's grant of summary judgment in favor of Appellees on Counts I through IV of Appellant's complaint, and we direct that the matter be remanded to the trial court for further proceedings consistent with this opinion. We affirm the Superior Court's

---

[13] Our decision to defer consideration of the continued viability of *Muhammad* until we are presented with a case in which is it is squarely implicated should not, as the concurrence suggests, be interpreted as a "fondness for *Muhammad*," Concurring Opinion (Wecht, J.) at 9, nor do we "skirt the issue . . . nonchalantly" as alleged in the concurrence, *id.* at 19. It is not our goal to "narrow *Muhammad's* scope while preserving some small part of the rule." *Id.* at 16. Rather, as explained herein, the Superior Court wholly misconstrued Appellant's complaint by focusing on only Appellant's fraud-based claims, while ignoring her legal malpractice claims wherein she clearly alleged that Appellees failed to properly advise her of the consequences of signing the Travelers Release. As such, Appellant is entitled to relief based on the Superior Court's failure to apprehend the nature of her claims, and, notwithstanding the concurring Justices' eagerness to dispose of *Muhammad*, it is simply unnecessary for this Court to consider doing so at this juncture.

decision reversing the trial court's grant of summary judgment in favor of Appellees on Count 5 (the fraud claim) of Appellant's complaint.

Affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Chief Justice Baer and Justices Donohue and Dougherty join the opinion.

Justice Wecht files a concurring opinion.

Justice Mundy files a concurring opinion.

Former Justice Saylor did not participate in the consideration or decision of this matter.